Rapallo, J.
The exceptions mainly relied upon on the argument are those taken to the refusal of the judge to *565 grant the motion for a nonsuit; to his refusal to charge the jury that “ if they believed that Fitch had had any disease of the eyes such as to require care and attention, no recovery could be had; ” that “ if they believed that Fitch had had any injury of the eyes there could be no recovery;” and that “if they believed that there existed at any time prior to the application either a disease or any injury of the eye there could be no recovery.” Also, to the exclusion of evidence that Fitch committed suicide. Other exceptions were taken, and appear in the case, but if the positions upon which they are founded are sound, they are available under the motion for a nonsuit, and have been so treated on the argument and will be here considered in that connection.
The motion for a nonsuit was made upon the ground that by the undisputed and uncontradicted evidence it appeared that Fitch, in the application he made for the policy, made misrepresentations as to certain facts, and concealed and withheld certain other facts, which, under the terms of the policy and of the application necessarily made it void.
It is claimed on the part of the defendant that the statements contained in the application were warranties and must be absolutely true; that it was not for the jury to pass upon the question whether they were material to the risk, nor whether the applicant made any intentional misstatement; that the only question is whether or not the statements were true, and tiiat if any untrue statement (except as to ancestry) was made in the application, the plaintiff cannot recover, and that it is wholly unimportant whether or not the matter as to which the untrue statement was made had any tendency to increase the risk or any connection with the cause of death, or whether the statement was known to the applicant to be untrue.
The first question to be considered is whether the statements contained in the application were absolute warranties or mere representations, and whether under the terms of the policy and application, the warranty therein mentioned was not, in effect, simply that the statements were made in good *566 faith. Although the term warranty is used in both instruments, it must be construed with reference to the other language employed in the same instruments. These instruments were prepared by the defendant, and themselves explain the degree of responsibility to be assumed by the applicant in answering the questions propounded to him. Although the word warranty is employed, yet, if the explanations accompanying that term show that a strict warranty was not intended, these explanations given by the defendant itself in the papers, and which induced the applicant to undertake to answer the questions and enter into the contract, must govern.
The application begins with a preamble headed “ Explanation'; ” this explanation describes the nature of life insurance and defines the terms “insured” and “assured;” it then proceeds to state that the policies of this company are made in entire, unconditional honest gopd faith, and that it is required as a condition that the application be made in equal good faith ; that if it is, and the conditions fulfilled, premiums paid when due, etc., “all of which is easily done when the intention is good, the assured may confidently rely upon the prompt payment of the assurance by this company as one of the most certain of human events; the assurance can be jeopardized only by dishonesty or inexcusable carelessness on the part of the applicant, since each question and answer is easily made correctly if only truthful; 11 do not know ’ is as proper at one time as ‘ yes ’ or ‘ no ’ at another; * * * the sole object is to protect the honest from the effects of misstatements, not only of themselves but of others, by having every thing so plain that it will be clearly evident that a, misstatement cam, be made by i/rvtention only.” It then proceeds to propound questions as to the grandparents, parents, uncles and aunts on the paternal and maternal sides, whether living or dead; their health when living, ages at death, causes of death, weight, height, complexion, color of hair, beard and eyes, and various other questions concerning them. Then follow a great number of questions of the most minute *567 character touching the insured, his constitution, habits, etc., and, among others, as to his weight; how much increase or diminution in weight in one year, and in five years; what diseases he has had, including those of childhood; whether any place where he has ever lived was subject to any disease, and what; as to his habits, how often he bathes; whether he rises and retires regularly; whether late or early; what he wears next his skin; what kind of stimulants he uses, if any; whether he takes his tea or coffee weak or strong; the extreme number of glasses of ale, beer or cider or wine he takes in a day; the quantity he takes in a month; whether he has ever been intoxicated and how often; whether the action of his bowels is regular every day; whether he has any practice tending to impair health, etc.; whether his vocation endangers life or health; what it will be ; whether he has reason to think that his residence, vocation or any circumstance affecting him will be more hazardous to life and health than is at present the case; whether his hands and feet are usually warm or cold; whether any kind of food usually produces ill health or indigestion; whether he has ever had any of a long catalogue of diseases, many of which are of a character which he might well have had without knowing it, and which he might naturally deny ignorantly; whether he has ever had any disease of or injury to any organ or has ever had any symptoms of disease" of any organ; whether he is acquainted with the laws of health and whether he takes pains to observe them, and a host of other questions which no human being could with safety undertake to answer accurately and warrant the correctness of his answers. Then follow questions as to his knowledge of the conditions of the insurance, and among these whether he is aware that any fraud will vitiate the insurance ; but he is not asked whether he is aware that any unintentional mistake in answering any of the host of questions thrust at him, whether material to the risk or not,, will be a breach of warranty, and vitiate his policy.
The applicant is required to answer the questions thus pro *568 pounded by making upon or over each question conventional marks one of which signifies yes or good or positive; one no or bad or negative; double of either, very or decidedly ; one medium, and the other do not know.
This document which the applicant- is required to sign, concludes with a declaration that his answers to the questions and the written statements in the preceding statement, declaration or warranty, together with the statement made to the examining physicians and signed, are warranties correct and true, and that there is not concealed, withheld or unmentioned therein any circumstance in relation to the past or present state of the health, habits of life, condition or intentions of the applicant, nor any fact concerning his relatives or ancestry with which the company ought to be made acquainted (without specifying what is the nature of such last mentioned facts); also that the statements, etc., shall be the basis and form part of the contract or policy and if not in all respects true and correct the policy shall be void.
This application was signed by Fitch, the questions being wholly or in part answered by means of the stipulated hieroglyphics, and a policy was thereupon issued on his life in favor of the plaintiff as assured - for $3,000. This policy contains a declaration on the part of the company that it is issued in entire unconditional honest good faith and with the just intent of scrupulously fulfilling all the conditions and engagements of the contract with absolute certainty, and .then ■proceeds to state tii&t fraud or intentional misrepresentation ■violates the policy and that the statements and declarations made in the application are warranties and in. all respects true, and do not suppress or omit any fact relative to the insured affecting the interest of the company or which whether material or not would tend to influence the company in taking the risk. To this policy is annexed a notice to the policyholders of the conditions of the insurance, one of which ■ is that proofs of the loss may be presented at any time, but. that as the payment loill be contested only %n case of fraud it is agreed and provided in order that the facts may be fresh *569 and attainable, that no action on the policy shall be sustainable unless commenced within twelve months after the decease of the insured.
It seems to us, looking at all these papers together and considering the character of the minute inquiries made of the applicant, the extravagance of supposing as to many of them that any one could undertake to answer them categorically as required and warrant the answers, or at most do more than express an opinion concerning the subject of them; coupled with the repeated professions of good faith on the part of the company and exhortations to like good faith on the part of the applicant, and the declarations that if the application is made in good faith equal to that professed by the company, and the conditions fulfilled, premiums paid, etc., the assured may confidently rely upon the prompt payment of the assurance by the company as one of the most certain of human events; that the assurance can be jeoparded only by dishonesty or inexcusable carelessness on the part of the applicant; that the sole object is to protect the honest from the effects of misstatements by having every thing so plain that a-'/misstatement can be made by intention onl/y ; that fraud or intentional misrepresentation violates the policy, and that the payment will be contested only in case of ’fraud/ the true construction of the papers is that the policy is to be void only in case of intentional and fraudulent misrepresentation or suppression of facts by the applicant, and that although the term warranty is used, yet its legal effect is so modified by the explanations and declarations by which it is accompanied, that it imports no more than an assurance that the statements are made honestly, in good faith, and are believed by the applicant to be correct and true. These explanations and declarations are so inconsistent with the legal effect of a warranty, in the strict legal sense of the term, that both cannot stand together; and to hold the applicant to the strict rules applicable to warranties, would be to entrap him into an agreement which he never intended to make. The statement that payment of the .loss *570 will be contested only in case of fraud, is one easily comprehended by every man of ordinary understanding; and, together with the other plain declarations, explanations and assurances contained in the papers, must have been intended, and were calculated, to inspire confidence in applicants for insurance and to induce them to believe that an unintentional and honest mistake or omission on their part, in traveling through the maze of complicated questions put to them, would not be taken advantage of by the company. Where a warranty is understandingly and clearly given by an insured, no matter how immaterial the fact warranted may be, he will be held strictly to his contract. But when thrown oif his guard and- induced to enter into such a contract by declarations of the insurer, such as appear in this case to have been contained in the papers prepared by the defendant and evidencing the contract, the declaration in the same papers that the statements are warranties and the basis of the contract, etc., must be so construed, if possible, as to harmonize with the explanations and declarations of the insurer; and if this is not possible they should be rejected.
Under this view of the contract it was necessary, in order to sustain the defence, to show not only that the statements were untrue, but that they were known by the insured so to he, and that they and the alleged omissions were made intentionally and with a fraudulent design; and to entitle the defendant to the nonsuit asked, it was necessary that this fraud should be so conclusively proved that there was no question for the jury.
There was some evidence tending to show fraud in the statement and in omitting to mention certain facts, but this evidence was, in our judgment, far from being of that conclusive character and so uncontroverted as to have justified the judge in nonsuiting the plaintiff. The main facts relied upon were, that some six years before the policy was applied for the deceased had had an inflammation of the eyes, termed by the physicians conjunctivitis. The evidence tended to show that this was caused b.y some sand being thrown in his *571 eyes while in the army, in 1864, and that he had been discharged from' the army for this canse; that this conjunctivitis was merely a temporary inflammation of the eye, of which he had been long since cured, and that it was not calculated to affect the duration of life; that he had been confined in the hospital, in Virginia, by reason of this inflammation of the eyes, in October, 1864, when he was furloughed, and that he was treated for the same complaint by a Dr. Benson, in November, 1864, and was finally discharged from tlie army in Hay, 1865.
It was attempted to be proved that his eyes bore traces of his having had iritis at some period of his life, but this proof was controverted by evidence, and therefore would not have justified a nonsuit. The policy was issued in November, 1870, and it is not claimed that he then had any disease of the eye. The application contained an inquiry whether the deceased “ had ever had cmy illness, local disease or injury in any organ” which question he answered in the negative. This is claimed to have been a misrepresentation and breach of warranty, by reason of which the plaintiff should have been nonsuited.
The president of the defendant, who appears to have been a physician, enumerates about fifty parts of the human body which come under the denomination of organs, including among others the eye, the nerves, bones, cartilages, veins, glands of the skin, etc.; and it is claimed by the defendant that an injury to or disease of any of these organs at any previous period necessarily rendered the answer given by the deceased a breach óf warranty or a misrepresentation which should avoid the policy.. If a finger had been broken the skin injured or a vein cut at. any period of the applicant’s life, the policy would, according to this doctrine, be void.
We think that, according to the construction which we have put. upon the contract in question, the judge would not have been justified in holding that the omission to mention a temporary injury to the eye by sand being thrown into it, which had produced inflammation six years before the policy *572 was applied for, and which was then cured, was conclusive-evidence of fraud, or a breach of warranty sufficient to avoid the policy. If of any importance it was at most evidence of fraud, to be submitted to the jury.
These policies are provisions made, usually, by persons of slender means, for the benefit of their families in ease of death; they sometimes devote their small savings for many successive years to paying the premiums. To justify us in holding that all the answers given to the multitude of questions asked in the case before us are warranties, and that a mistake or unintentional omission as to any of them should avoid the policy, the clearest, most unequivocal and unqualified language should be employed in the policy and conditions. A company cannot be permitted in the same papers to say to the assured, to induce him to enter into the contract, that nothing but fraud or intentional misstatements shall avoid his policy, or that payment will be contested only in case of fraud, and when the claim for payment is presented, to set up as a defence a merely technical breach of warranty in relation to some trivial matter. In a case like this, considering the number and character of the inquiries made of the insured, if the answers were all held to be warranties, it would, in substance, be optional with the company whether to pay or not, for it would be a marvel if some flaw could not be found in the application. No intelligent person would knowingly invest his earnings in so precarious a security. :
Another alleged ground of nonsuit was the response of the applicant to the question: “ Family physician, and each one who has ever given the party medical attendance ? If neither exists name some medical man, an acquaintance, who knows the party well.” The answer was, “ Have none.” This answer was upon its face incomplete. It applies only to the call for the name of the family physician. Whether the suppression of the name of Dr. Benson, who had attended the applicant for inflammation of the eyes, in November, 1864, and again, in 1867, for some other complaint not mentioned, *573 and of the doctor who was called in to visit his boy in 1870, and attended him twice, at Troy, were fraudulent suppressions, were questions for the jury. If the defendant had desired a fuller answer to the question it should have insisted upon it at the time.
The same remarks apply to the statements of the applicant as to his vocation, his residence, and to the question whether he had been medically examined for the army or navy, or with reference to insurance, and to his omission to mention the fact of his discharge from the army. There was no such conclusive evidence of fraud or intentional misrepresentation as required the court to pass upon the fact. The refusals to charge as requested are covered by the remarks already made; and this disposes of all the material exceptions except the rejection of evidence that Fitch, the deceased, committed suicide.
The policy contained no stipulation that it should be void in case of the death of the insured by suicide. It was not taken out for the benefit of Fitch but of his wife and children. Although they were bound by his representations, and any fraud he may have committed in taking out the policy, the policy having been obtained through his agency, yet they were not bound by any acts or declarations done or made by him after the issue of the policy, unless such acts were in violation of some condition of the policy. We have examined the various grounds upon which the defendant claims that this evidence was admissible, bufrare of opinion that they are not sufficient.
The order of the General Term should be reversed and the judgment entered upon the verdict affirmed, with costs.
All concur, except Church, Ch. J., and Folger, J., not voting.
Order reversed and judgment accordingly.